MILES-CONLEY COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11752. Promulgated April 30, 1948.

*Joshua W. Miles, Esq.*, and *George Ross Veazey, Esq.*, for the petitioner.

*E. M. Woolf, Esq.*, for the respondent.

---

[6] See footnote 1, *supra;* Public Law No. 178, 78th Cong., 1st sess. (H. R. 3381.)

OPINION.

KERN, *Judge*: The first and more interesting question involved in this proceeding is whether the respondent erred in allocating to petitioner corporation all of the net income of a sole proprietorship carried on by petitioner's controlling stockholder, A. Carlisle Miles, doing business as Carlisle Miles & Co., for the taxable year ended August 31, 1944. Respondent determined that petitioner's income for the taxable year should be increased by the amount of the net income of the proprietorship under the provisions of section 45 of the Internal Revenue Code.[1]

Respondent's principal argument offered to support the validity of this determination is that A. Carlisle Miles, who controlled petitioner corporation, and, of course, controlled his sole proprietorship, caused certain of the profits which would otherwise have been earned by the petitioner to be shifted to his individually owned business.

Petitioner contends that respondent's determination was erroneous and argues substantially as follows: That the business of the corporation and the proprietorship, though of a related nature and controlled by the same individual, were during the taxable year separately or-

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

ganized and conducted, that the income of each is reflected in the books of each, and that the effect of respondent's determination is to consolidate the net incomes of two separate business organizations. Petitioner relies strongly on *Ross* v. *Commissioner*, 129 Fed. (2d) 310, and *Seminole Flavor Co.*, 4 T. C. 1215. Briefs were filed herein prior to our decision and opinion in *Buffalo Meter Co.*, 10 T. C. 83.

Petitioner was a "one man" corporation, engaged in a business which may be characterized as the commission business. The principal elements which created its income were the services of its president and sole stockholder and liquid capital in the form of cash. Its balance sheet for the end of 1943 shows that, of its total assets of $57,507.12, $36,690.31 represented cash, $9,398.76 represented notes and accounts receivable, and $8,600 represented the cash value of a life insurance policy. Only $1,181.83 represented the value of depreciable capital assets. Shortly prior to the taxable year petitioner's president and stockholder decided that the petitioner should cease to solicit the dealing in vegetables, and that this part of its business should be carried on by him in his individual capacity. He thereupon began business as a sole proprietor. The principal elements producing the income of the proprietorship were again the personal services of A. Carlisle Miles and cash. The cash so used was his own and not that of the petitioner. With this cash he made his own purchases of produce handled by the individual proprietorship and paid directly the greater part of its expenses. The proprietorship shared rented space with the corporation and also shared the services of certain employees, the use of utilities, and other minor matters. The expenses of the facilities shared by the corporation and the proprietorship were prorated according to the number of carloads received by each and the proprietorship paid to petitioner the sums thus ascertained to be its share of these expenses. These prorated payments amounted to a small percentage of the total expenditures of the proprietorship.

The income of the proprietorship thus earned principally by the use of its own money, and the services of the proprietor, can not be realistically said to have been earned by the corporation, as in the cases of *Forcum-James Co.*, 7 T. C. 1195, and *R. O. H. Hill, Inc.*, 9 T. C. 153. The use, without consideration, of the capital assets of the corporation was not a material element in the production of the income of the proprietorship. Cf. *Rasmusson* v. *Eddy's Steam Bakery, Inc.*, 57 Fed. (2d) 27. If the income purportedly that of the proprietorship had, in reality, been earned by the corporation, then it would have been taxable to the corporation by virtue of one of the most fundamental concepts of taxation and not by virtue of section 45 of the Internal Revenue Code. The respondent does not deny that A. Carlisle Miles did operate and conduct a business. Indeed, before section 45 could be applied by respondent, it would be necessary that there exist "two or

more organizations, trades, or businesses * * * owned or controlled by the same interests."

If the income here in question represented a profit of the corporation realized not by it, but by the proprietorship as a result of a shifting of interests for the purpose of avoiding such realization for taxation, then section 45 would be applicable. See *Asiatic Petroleum Co. (Delaware) Ltd.*, 31 B. T. A. 1152; affd., 79 Fed. (2d) 234. This is not the situation present in the instant case. Although respondent, in his brief, makes statements to the effect that Miles shifted profits of the corporation to his individually owned company, it is apparent that he does not mean that unrealized earnings of the corporation were shifted to the proprietorship for the purpose of permitting the realization of the profits by, and their taxation to, the proprietorship. His true position is more exactly stated in the following sentence: "It thus appears that commissions which would ordinarily have been earned by the petitioner were shifted to the individually owned business of Mr. Miles."

Respondent contends that the instant case can be distinguished from *Seminole Flavor Co.*, *supra*, in that the sole proprietorship of Carlisle Miles & Co. was not organized and operated for a definite business purpose. As we have pointed out, respondent does not deny that A. Carlisle Miles, a living individual, organized and operated a business under the name of Carlisle Miles & Co. with his own money and his own efforts. It is not suggested that A. Carlisle Miles, doing business as Carlisle Miles & Co., should be disregarded as a sham. While it is difficult to follow the argument on this point, it seems to be respondent's position that no business purpose of the corporation was served by reason of its relinquishment of a part of its business and its permission to its sole stockholder to conduct the business thus relinquished in his individual capacity, that it will therefore be considered that the corporation did not relinquish any part of its business, and that when A. Carlisle Miles purported to carry on the part of the business purportedly relinquished he was doing so only as an agency or department of petitioner.

In our opinion this position does not represent a realistic appraisal of the facts. It ignores what was done and relies too much on what might have been done, or what should have been done. As we said in *Seminole Flavor Co.*, *supra*, p. 1235: "Actually, the principal force behind all of the Commissioner's argument is that petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45." This argument we rejected.

Here we have a "one man" corporation engaged in the business of

buying and selling, or selling on commission, fruits and vegetables. The corporation could have continued its business in fruits and vegetables. However, its controlling stockholder decided that petitioner should relinquish its active conduct of the business relating to vegetables and that he, as an individual, should organize and carry on the vegetable business as a sole proprietor, and this was done. He carried on the vegetable business as a sole proprietor, but shared offices and expenses with the corporation. The result of this transaction was to reduce the income of the corporation, and also to reduce the amount of taxes collected by the Commissioner of Internal Revenue. However, we know of nothing in the Internal Revenue Code, and no cases have been called to our attention, which would justify a disregard of the existence of a sole proprietorship because of any lack of business purpose *quoad* the corporation. In the instant case we assume, *arguendo*, that the purpose of A. Carlisle Miles in causing the petitioner to relinquish its dealing in vegetables and in organizing and conducting the business in vegetables as a sole proprietorship was not to further the best interests of the corporation, but was to further his own best interests (including the minimizing of total taxes payable by him and his controlled corporation). We are, nevertheless, unable to conclude that these assumed facts compel us to merge the actuality of the sole proprietorship into the fiction of the corporation for tax purposes, or to disregard A. Carlisle Miles as a separate taxable entity. This is not the case of an individual organizing a solely owned corporation which, as a fiction and a sham, may be disregarded for tax purposes. Cf. *Higgins* v. *Smith*, 308 U. S. 473. The respondent, in this case, recognizes the corporation, but disregards the individual. Even his disregard of the individual is provisional and paradoxical. His position appears to be that the sole proprietorship is recognized for the purpose of invoking section 45 and that the reason section 45 is applicable is that, in reality, the sole proprietorship does not exist because it is not useful to the legal fiction of the corporation.

In the instant case it may be that the sole stockholder of the corporation received from the corporation something of value at the time of and by reason of the relinquishment of part of its business by the corporation. This something of value, in the nature of good will, might have been taxable to the sole stockholder in the year in which it was received as a distribution of a dividend or a distribution in partial liquidation. Such an issue is not before us. The fact, if it be a fact, that the sole stockholder received something of value from the petitioner in 1943 which he used in the operation of a sole proprietorship in 1944 would not require or justify the taxing of the income of the proprietorship to the corporation.

The cases cited by petitioner are persuasive, but not controlling. In *Seminole Flavor Co.*, *supra*, a compensation was paid to the corpora-

tion by the stockholder-partners for the right to carry on a part of the business formerly transacted by the corporation, and we concluded that this compensation was fair and fairly arrived at. In *Ross* v. *Commissioner*, *supra*, the facts stated by the Circuit Court of Appeals indicate that the corporation and the partnership composed of its stockholders were formed at approximately the same time, and no part of the business of the corporation was relinquished to the stockholders.

The recent case of *Buffalo Meter Co.*, *supra*, while having distinguishable facts, is, perhaps, closer to the instant case. There the two stockholders of a corporation, organized in 1894 and engaged in the business of manufacturing and selling meters, created a partnership in 1942 for the purpose of taking over from the corporation, and carrying on, the business of manufacturing the meters. While certain of the assets of the corporation necessary for the manufacture of meters were paid for by the partnership at their inventory value, there was no payment for the business as such relinquished by the corporation, or for any item which would represent good will. There was no finding that a sound business reason (from the standpoint of the corporation) dictated the transaction. We held in that case that section 45 had no applicability. In the course of our opinion we said:

> The petitioner's stockholders here were under no obligation to continue the business, either the whole or any part of it, in corporate form. They might have dissolved the corporation entirely and transferred all of its functions to the partnership. As has been said repeatedly, the tax laws do not undertake to deny taxpayers the right of free choice in the selection of the form in which they carry on business. The petitioner's stockholders chose here to retain, in corporate form, one of the major functions of petitioner's business, the foundry, and to transfer to the partnership the manufacturing and selling division. This was in no sense an unnatural division. The foundry and manufacturing operations were not interdependent. Either might have existed independently of the other * * *.

Respondent also contends that the application of section 45 is required to accurately reflect the true income of each business because the books and records of the petitioner and the proprietorship do not reflect their true incomes in that the method of the allocation of expenses was not proper and the payments made to the corporation pursuant to the method of allocation used were inadequate. We disagree with this contention. Both the corporation and the proprietorship kept detailed and complete books and records, accurately reflecting the various items that were pertinent in ascertaining the income of each. As to a relatively insignificant item of expense, the allocable part of the rent, respondent contends that the payment made by the proprietorship should have been determined by the number of doors assigned to the proprietorship rather than the proportionate amount of carloads handled by it. Even if we agreed with this contention, which we do not, it would hardly justify the allocation to petitioner of all of the

net income of the proprietorship. Respondent also contends that no part of the salary paid by the corporation to A. Carlisle Miles was allocated to the proprietorship. This contention is more properly to be considered under the issue next to be considered.

That issue is whether respondent erred in determining that a reasonable compensation for services rendered to petitioner by A. Carlisle Miles did not exceed $15,000 for each of the taxable years 1942 and 1943, and did not exceed $10,000 for the taxable year 1944.

On this issue we decide in favor of respondent. The proof offered by petitioner was not such as to support a conclusion that respondent erred in his determination. As to 1944, the record affirmatively supports this determination. In that year a considerable part of the efforts of Miles was devoted to the business of the proprietorship, rather than to the business of the petitioner.

It should be pointed out in this connection that there is an inconsistency in respondent's position on the two issues here involved. Respondent has allowed to petitioner a deduction on account of compensation to Miles in 1942 and 1943 of $15,000. The deduction allowed in 1944 was only $10,000. The only reason which could justify this reduction is the fact that in 1944 Miles was devoting a considerable part of his time to the business of the proprietorship, yet the respondent included the entire net income of the proprietorship in the taxable income of the petitioner corporation without allowing as a deduction any compensation for Miles' services rendered in producing that income.

On the first issue our decision is in favor of petitioner; on the second it is in favor of respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

VAN FOSSAN, *J.*, dissenting in part: I feel that the respondent's action as to salaries should be reversed.

---

MURDOCK, *J.*, dissenting: The record justifies the full salaries paid to Miles. He was the whole show.