Twin Oaks Company v. Commissioner.
Twin Oaks Co. v. Commissioner
Docket No. 16845.
United States Tax Court
1949 Tax Ct. Memo LEXIS 236; 8 T.C.M. (CCH) 280; T.C.M. (RIA) 49067; March 23, 1949
Carl E. Davidson, Esq., and Ralph R. Bailey, Esq., for the petitioner. John H. Pigg, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined the following deficiencies in petitioner's income tax, declared value excess-profits tax and excess profits tax and penalties: Declared Value
Income
Excess-Profits
Excess
Year
Tax
Tax
Profits Tax
Penalties
1942
$1,394.61
$ 373.11
1943
3,120.38
3,778.43
$11,311.08
$2,827.77
1944
4,532.68
6,565.25
24,562.88
6,140.72 He included in the petitioner corporation's income the profits *237 of a partnership formed in 1941 by the shareholders and their spouses to conduct petitioner's business with current assets acquired from petitioner for their note and their assumption of certain obligations of petitioner, on premises which petitioner leased to them. Petitioner assails the determination that the partnership and conveyances were shams which should not be recognized for tax purposes; assails the disallowance of a net operating loss carryover from 1941, computed under the theory that the partnership was recognizable, and assails the determination of delinquency penalties for its failure to file excess profits tax returns for 1943 and 1944. Findings of Fact Petitioner, an Oregon corporation with principal office at Eugene, Oregon, filed its income and declared value excess-profits tax returns for the years 1942, 1943 and 1944 with the collector of internal revenue for the district of Oregon. It was organized in 1924 and engaged in the sale of lumber and builders supplies at Eugene and Junction City, Oregon, and until 1937 at Cottage Grove, Oregon. In 1941 it had outstanding 946 shares of stock of a par value of $94,600, or $100 each. Half of these shares were owned *238 by John J. Rogers, petitioner's president, and the other half were owned by Louis C. Scharpf, petitioner's secretary-treasurer, and his wife, Eva M. Scharpf, in the amounts of 35.3 and 437.7 shares, respectively. Two of the Scharpf shares were held in the name of E. R. Bryson, an attorney, to qualify him as a director with Rogers and Scharpf. Eva M. Scharpf purchased her shares at various times with funds inherited from her father. She and Rogers had acquired most of their shares before 1930. During the years 1935-1940 petitioner's books showed assets which were carried at total values ranging from $117,283.26 in 1938 to $150,531.66 in 1940. These assets consisted of merchandise inventory and accounts receivable and in addition there were buildings, furniture and fixtures which had a book value of about $37,000. During 1935-1940 petitioner sustained small operating losses, but receipts from other sources produced net incomes of a little over $2,000 for 1936, 1937 and 1939, $677.05 for 1935, and $6,036.35 for 1940. As officers, Rogers and Scharpf received equal salaries which, combined, ranged from $9,800 in 1937 to $14,400 in 1940. Both were actively engaged in the conduct of petitioner's *239 business; Rogers purchased stocks of lumber, shingles, molding and coal and had charge of credit and collections; Scharpf made purchases of all other building materials handled. Their wives rendered no services. In the latter part of 1939 Scharpf suggested to Rogers that the business be conducted as a partnership. Rogers was not agreeable to the change, being reluctant to assume the unlimited liability of a partner. Scharpf persisted, however, and during 1940 both had a number of conferences with Bryson, the attorney, who had given them advice for many years. The attorney recommended acceptance of a plan to which Rogers finally assented, and pursuant thereto Rogers, Scharpf and their wives made a partnership agreement as of January 1, 1941, whereby the four were to conduct the business as equal partners with operating assets which petitioner was to transfer to them and on premises which petitioner was to retain and rent to them. At the close of 1940 petitioner's balance sheet showed the following assets and liabilities: ASSETS
Cash
$ 243.96
Notes and Accounts Receivable
37,477.76
Merchandise
70,892.48
Investments
2,926.09
Land
23,993.25
Buildings
$26,276.49
Furniture
6,959.28
Trucks
5,239.49
$38,475.26
Less: Depreciation
23,653.78
$14,821.48
14,821.48
Prepaid Insurance
176.64
Total
$150,531.66
LIABILITIES
Accounts Payable
$ 16,271.55
Notes Payable
34,238.00
Accrued Taxes
3,001.89
Earned Surplus
2,420.22
Capital Stock
94,600.00
Total
$150,531.66
*240 The accounts or notes payable comprised $2,144 due Rogers, of which $1,200 was salary and $944 dividends; $1,270.60 due Scharpf, of which $1,200 was salary and $70.60 dividends; a note for $1,500 due Corabelle M. Rogers, and a dividend of $873.40 due Eva M. Scharpf. Petitioner's land and buildings consisted of town lots at Eugene, improved with a concrete building and hydraulic elevator, a large frame building, a storage shed and spur railway track; two lots at Junction City improved with a hollow tile warehouse and a wooden shed, and an old warehouse and vacant lots at Cottage Grove. The State Highway Commission had drafted plans to run a new highway across the principal property at Eugene, but later changed the highway routing. Petitioner also occupied leased premises. About nintenths of its sales were made at Eugene; one-tenth at Junction City, and the Cottage Grove property was sometimes rented, but produced little income. Pursuant to the plan agreed upon for the formation of a partnership petitioner's directors on January 2, 1941, resolved to change petitioner's name from Twin Oaks Builders Supply Company to Twin Oaks Company and to accept the offer of Rogers, Scharpf and their *241 wives to acquire its current assets at book values in consideration of their assumption of its accounts payable and their 2 per cent note for the balance; to lease to them its fixed assets, and to discontinue its builders supply business. On January 25, but as of January 1, 1941, Rogers, Scharpf and their wives each signed a partnership agreement, declaring their intention to associate themselves together as copartners under the firm name of Twin Oaks Builders Supply Company for purchasing from petitioner, which then had the same name, all its assets except real estate, fixtures and equipment and for leasing the latter. It was agreed that each contribute $2,000 and share equally in profits and losses; that the partnership engage in the same business as that previously conducted by petitioner; that such business be conducted by Rogers and Scharpf, each performing "the work heretofore by him performed" and each being entitled to a salary in addition to his share of the profits; that a bank account be opened in the partnership's name against which checks could be drawn by Rogers or Scharpf or by "some person to whom they may jointly in writing delegate such power". "Each of the partners *242 shall have an equal voice in the control of the business and the affairs of the copartnership and in the decision of any questions which may arise." The duration of the agreement was not limited in time, but either pair of spouses desiring dissolution was required to notify the other pair and offer to purchase the others' interest not only in the partnership but also in petitioner's stock, and to assume the indebtedness of both firms. On acceptance of the offer the sellers were to agree not to engage in the same business in the area for four years. If the offer should not be accepted within 90 days, the offering spouses could require a termination and liquidation of the partnership. For the purposes of these provisions each pair of spouses "shall be deemed as one copartner". Upon the death of a wife the surviving husband was bound to purchase her interest in the partnership and the corporation for a price determinable by reference to book value. Upon the death of a husband the surviving husband and his spouse had a 90-day option to purchase the interests of both the others on like terms. These terms provided for installment payments with security and the arbitration of disputes. *243 By a contract of May 31, 1938, Rogers, as party of the first part and owner of one-half of petitioner's shares, and Scharpf and wife, as parties of the second part and owners of the other half, had agreed that upon the death of either husband, the survivor should have the right to acquire the other party's stock in petitioner on like terms. By a "Supplement to Partnership Agreement", signed January 30, 1941, it was recited that Corabelle M. Rogers and Eva M. Scharpf "render and are expected to continue to render some personal services to the partnership" and it was agreed that each "be paid a salary of $25.00 per month", regardless of profits and losses for the services which were to be performed "at their convenience". On January 2, 1941, Rogers, Scharpf and their wives signed a certificate of their intention to conduct a lumber and building supplies business at Eugene and Junction City, Oregon, under the assumed name of Twin Oaks Builders Supply Company, and filed it in the public records of Lane County, Oregon, on January 18. The partnership, by Rogers, gave to petitioner its note, dated January 2, 1941, in the amount of $89,378.35 payable in one year with 2 per cent interest. *244 This amount represented the excess of the book value of current assets covered by the purchase offer above the accounts payable which the partnership was to assume. As to January 1, 1941, entries were made in petitioner's books indicating the transfer of its cash, notes and accounts receivable, merchandise, investments of $2,726.09, and delivery equipment of $1,809.61 to the partnership, and the elimination of $16,271.55 and $7,500 of accounts and notes payable, respectively, from its liabilities. As of the same date books were opened in the name of the partnership, indicating as its assets the cash, notes and accounts receivable, the merchandise, investments and delivery equipment in the same amounts transferred from petitioner's books and also an account receivable of $500 from Rogers. Liabilities were shown as accounts payable of $16,271.55, notes payable of $89,378.35, and "partners' investment accounts" of $8,000. The $8,000, representing the $2,000 contribution of each partner required by the agreement, was provided largely by the cancellation of amounts owed to them or to members of their families by petitioner on account of unpaid salary, dividends and monies advanced. *245 By a written agreement dated January 2, 1941, petitioner leased to the partnership all its remaining assets, consisting of the real properties, fixtures and equipment, for $3,000 a year. The partnership on the same date filed with the State Industrial Accident Commission a "notice of engaging in hazardous occupation" and of employing 25 workmen on an estimated monthly pay roll of $2,600. It registered with the State Unemployment Compensation Commission and filed required reports thereafter. It applied for and received a registration number under the Social Security Act. It advised the First National Bank of Eugene about petitioner's transfer of assets to it, and opened an account with the bank from which each of the four partners was authorized to withdraw funds. It served formal notice on the bank in December 1944 that each of them had power to act for the firm in borrowing money, making and endorsing notes and in transferring assets. After January 1941 the lumber and builders supply business was conducted by Rogers and Scharpf as before; the partnership bore the same name that petitioner had formerly borne; made contracts and transacted business in that name, and taxes were assessed *246 against it in that name. There were no changes obvious to customers except the elimination of officers' names on stationery. The wives of Rogers and Scharpf, who had rendered no services before, sometimes signed pay roll checks and notes and listed accounts receivable once a month. Separate bank accounts and separate books were maintained for petitioner corporation and for the partnership. Petitioner's activities, as recorded, were limited to the owning and leasing of real estate and equipment. Its income for the years 1941-1944 consisted of the $3,000 rent and interest on the note of the partnership and some very petty miscellaneous items. Its books indicated a loss of $904 in 1941 and net incomes of a few hundred dollars for the succeeding years. In July 1941 it bought a lot and old frame residence adjoining its property in Eugene for between $3,500 and $4,000 and demolished the building. The lot has since been used in the builders supply business for storage. In December 1943 it bought another lot and residence in Eugene for $2,500. The property was then rented for $66 a month; the tenant remained in possession and thereafter paid the rent to the partnership. In 1946 and 1947 the *247 partnership paid $4,200 to petitioner as rent. The books of the partnership indicate the following gross and net incomes for the years indicated: Year
Gross Income
Net Income
1941
$375,587.51
$29,776.20
1942
262,931.20
18,525.29
1943
356,930.54
42,086.52
1944
512,001.16
66,119.33
The net income was each year credited on the partnership books to the partners' accounts, $6,600 being credited to each husband as salary; $300 to each wife as such and the remainder divided among them in equal parts. The partnership paid petitioner the $89,378.35 due on the note plus 2 per cent interest thereon in annual installments ending in December 1946, using earnings and the proceeds of property sales. The partnership has endorsed petitioner's notes for bank loans. For the years 1941-1944 corporation income and declared value excess-profits tax returns were filed for petitioner and separate partnership returns for the partnership. Petitioner filed no excess profits tax returns for 1943 and 1944. The Commissioner determined deficiencies in petitioner's income and declared value excess-profits taxes for 1942, 1943 and 1944, and in excess profits taxes for 1943 and 1944 *248 by including in petitioner's income the profits reported by the partnership, with certain adjustments, under the view that the partnership, transfers of assets and leases to it were without substance and should be disregarded for Federal tax purposes. For the same reason petitioner's reported operating loss of 1941 was not allowed as a carry-over for 1942. Penalties were determined for petitioner's failure to file excess profits tax returns for 1943 and 1944. Opinion Petitioner charges respondent with error in refusing to recognize for tax purposes the existence of a partnership under the agreement of January 1, 1941, and in including partnership profits for the years 1942, 1943 and 1944 in its own income for those years. If the partnership should be recognized, petitioner sustained in 1941 a net operating loss which it contends should be allowed in 1942 as a carry-over deduction. It further contends that even if the partnership was not recognizable, its contrary belief constituted reasonable cause for not filing excess profits tax returns for 1943 and 1944, and no penalty for failure to do so should be imposed under section 291, Internal Revenue Code. *249 Respondent defends his determinations by the argument that the technical creation of the partnership was form without substance and as such a mere device to reallocate income among family groups with resulting tax advantage in view. He argues that the partnership was a sham which should be disregarded under the doctrine of Helvering v. Clifford, 309 U.S. 331, and like decisions, or in the alternative that additional amounts should be allocated to petitioner's income as adequate interest and rent under the provisions of section 45, Internal Revenue Code. He defends imposition of the penalties as warranted by the circumstances. It is settled that a taxpayer is free to adopt such organization for his affairs as he may choose. But if the form employed is a sham without substance, it may be ignored for tax purposes, Helvering v. Horst, 311 U.S. 112; Gregory v. Helvering, 293 U.S. 465, even although valid in defining the parties' rights under state law. Commissioner v. Tower, 327 U.S. 280. An arrangement whereby income is spread, as here, among members of family groups invites special scrutiny. Helvering v. Clifford, supra. *250 But each case must be decided on its own facts and those facts must be viewed as a whole. Prior to January 1941 petitioner, as a corporation, had been engaged for many years in the purchase and sale of builders materials, including lumber. In this business, which was managed by its shareholders, Rogers and Scharpf, it used improved real estate, trucks and cash, and kept on hand a merchandise inventory. It also owned some other real property, which was rented or idle. The principal stockholder, Rogers, owned 473 shares, or half its stock; Scharpf owned 35.3 shares and Scharpf's wife owned the remaining 437.7 shares. In January 1941 Rogers and wife and Scharpf and wife, pursuant to an agreed plan, made a partnership agreement for the purpose of conducting petitioner's business as equal partners under petitioner's name. Petitioner's directors, Rogers, Scharpf and their attorney, Bryson, thereupon resolved to change petitioner's name; to sell all its assets except real estate to the partnership in consideration of the partnership's assumption of its accounts payable and the partnership's 2 per cent note in an amount which added to the liabilities assumed would equal the assets' book *251 value. Petitioner further agreed to lease its real estate to the partnership for $3,000 a year. A performance of this agreement was indicated on petitioner's books by the elimination from its assets of all its cash, being $243.96, notes and accounts receivable of $37,477.76, merchandise inventory of $70,892.48, investments of $2,726.09, and delivery equipment of $1,809.61, and the addition of a 2 per cent note receivable for $89,378.35 from the partnership. These eliminations left it with recorded assets of the note; buildings, land and fixtures carried at $37,005.12, a $200 "investment" and $176.64 prepaid insurance. From its liabilities, accounts payable of $16,271.55 and notes payable of $7,500 were eliminated, leaving recorded liabilities of $26,738 notes payable and accrued taxes of $3,001.89. As of the same date books were opened for the partnership showing exactly the same assets and values as those eliminated from petitioner's accounts and in addition an account receivable of $500 from Rogers. As liabilities the $89,378.35 note and accounts payable of $16,271.55 were shown. "Partners' Investment Accounts" were recorded at $8,000. This figure represents the $2,000 contribution *252 which each partner had agreed to contribute, and equals the $7,500 notes eliminated from petitioner's liabilities p us the $500 account receivable from Rogers. After these initial entries, separate books were kept for petitioner and the partnership. Business income was credited to the latter and after salary credits of $6,600 each to Rogers and Scharpf, $300 each to their wives, and a charge of $3,000 for rent to petitioner, 25 per cent of the profits were credited to each partner. Petitioner's income, as recorded and reported, thereafter consisted of the $3,000 rent and some interest on bonds and notes. Formalities were observed in making and paying the $89,378.35 note with interest; in registering the partnership with tax officers and other public authorities concerned and in notifying banks. A formal lease of the real estate was executed by petitioner, and while, as respondent points out, no formal bill of sale for the assets was shown, we deem the transactions and steps for which petitioner seeks recognition adequately fortified in a technical sense. But we do not perceive substance in these forms. After as before January 1941 the business was conducted by Rogers and Scharpf *253 under the same name with the same assets in the same manner. No additional funds were paid in as operating capital; no assets were removed; and there was no change in policy or in managing personnel apart from the negligible services of the wives. Petitioner introduced much testimony to prove that the partners' contributions of $2,000 each represented new capital needed, and the record is replete with details of amounts which it owed to Rogers, Scharpf and their wives on account of unpaid salary and dividends or for monies advanced, and with statements that the four "paid in" the excess above cancelled debts due them. But apparently (for the testimony is very vague) the "cash" payments were effected by the cancellation of petitioner's debts to the partners' children and the parent's payments to the child in reimbursement. At all events it is enough for our purposes that the partnership's opening balance sheet shows on hand only the amount of cash which was eliminated from petitioner's assets, and as notes payable of $7,500 were also eliminated without appearing as a liability of the partnership, we readily infer that the $8,000 recorded as partners' investments were provided by this *254 cancellation and the $500 account payable by Rogers. It is true, as petitioner argues, that cancellation increased assets in a bookkeeping sense as did also the note for $89,378.35. But as the note itself was paid off by earnings of the business, it seems plain that the capital contributions to the partnership and the sale price of the assets were both satisfied by bookkeeping entries conforming to a scheme which had no substantive effect whatever on the business. And since petitioner's officers continued as business managers, it can be said here as in R. O. H. Hills, Inc., 9 T.C. 153, that: "* * * the partnership contributed absolutely nothing either in services or capital to the production of the income * * *. * * * its function and purpose were merely to siphon off the greater portion of the earnings * * *." Cf. Ingle Coal Corporation, 10 T.C. 1199; Forcum-James Co., 7 T.C. 1195. Petitioner's business, it should be noted further, was unitary in character and in this respect differed from the businesses considered in Miles-Conley Co., Inc., 10 T.C. 754; Buffalo Meter Co., 10 T.C. 83, and Seminole Flavor Co., 4 T.C. 1215. *255 In those cases recognition for tax purposes was accorded the individual proprietorship or the partnership formed by the taxpayer's shareholders for operating a severable branch of the corporation's activities. But petitioner's building supply business was not susceptible of any logical division. The real estate, to which petitioner retained title, was essential to its conduct and continued to be used in it under the form of a lease. In this respect petitioner's position is analogous to that of the taxpayer in Broadway Strand Theatre Co., 12 B.T.A. 1052, wherein the Board rejected the shareholder's contention that profits of theater operation were his individual income although he had transacted business under his own name. Petitioner properly contends, however, that even in the absence of a business purpose quoad itself as a corporation, the partnership should be recognized if its formation served the interests of its individual shareholders. Miles-Conley Co., Inc., supra. Several personal reasons for the change were asserted. Attorney Bryson testified that Scharpf felt entitled to a more substantial interest in the business than that represented by his *256 35.3 shares and wished the partnership as a means of getting that interest while Rogers opposed, fearing the unlimited liability and the possibility that Scharpf would want to take in his sons. Scharpf himself said that he wanted a partnership "so that I would have a decent share of the profits"; also that under such a form of organization he could get out more readily. He expected Rogers to have a half interest, but Rogers decided to take his wife in also because, in his own words, "although I was the only member of the corporation, still it was a family affair." This testimony, in our opinion, affirmatively supports the respondent's view that the purpose of the partnership was to achieve a reallocation of income among family groups. The result was certainly accomplished, for the interests of the three shareholders were equally divided among the four spouses. Compensation was paid for services rendered by the partners, and their note for assets was paid from future business earnings. As above shown, there was no new capital; no new services, no change in business. The only real result of the change was a new distribution of profits, and the Commissioner was correct in refusing to *257 recognize it for tax purposes. This disposition makes it unnecessary to consider an application of section 45 and as all business profits are taxable to petitioner, there was no recognizable net operation loss in 1941 which should be carried over. We do not believe, however, that petitioner's officers showed a lack of prudence in failing to file excess profits tax returns for 1943 and 1944, but on the contrary that they honestly deemed the partnership recognizable for tax purposes. Since no excess profits tax returns were required under that view, they had reasonable cause for not filing any. Imposition of the penalties is not sustained. Hugh Smith, Inc., 8 T.C. 660; Estate of Frederick C. Kirchner, 46 B.T.A. 578. Decision will be entered under Rule 50.