OPINION. Black, Judge: The sole issue which we have to decide in these proceedings is whether the net income of the sales companies for their taxable periods in 1944 and for the calendar year 1945 should be included in the net income of petitioner for the calendar years 1944 and 1945, respectively. In support of his determination that the net income of the sales companies should be included in the income of petitioner, respondent relies upon three propositions which may be stated as follows: 1. The corporate entity of each sales company should be disregarded. 2. The net income of the sales companies should be combined with petitioner’s net income under section 45 of the Internal Revenue Code which authorizes respondent to allocate “gross” income, deductions, credits, or allowances between organizations if necessary to prevent tax evasion or clearly to reflect income. 3. Control of the sales companies was acquired for the “principal purpose” of evading or avoiding Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance under section 129 of the Internal Revenue Code. We shall take up these propositions in their order. 1. The corporate entities of the sales companies should be disregarded. — In discussing the foregoing proposition we shall not repeat the facts which have been embodied in our findings of fact. It is sufficient to say that we think these facts show the sales companies were organized for business purposes and that in the taxable years they each did in fact engage in business activities and, therefore, the corporate entity of each company should be recognized. National Carbide Corp. v. Commissioner, 336 U. S. 422; Moline Properties, Inc. v. Commissioner, 319 U. S. 436. In the National Carbide case, supra, the taxpayers were wholly-owned subsidiaries of a parent corporation which utilized them as operating companies in the manufacture and sale of products. They operated pursuant to contracts with the parent which provided that the subsidiaries were employed as agents of the parent, that the parent would furnish working capital and that all profits in excess of 6 per cent on their capitalization would be paid to the parent. The contracts also provided that the parent was to provide plants and machinery, executive management and office facilities, and that no interest was payable on loans from the parent. The head of each division of the parent was in turn the head of the same division of the subsidiary. The leading officials of the parent held similar positions in the subsidiaries. The directors of the subsidiaries met only to ratify the actions of the directors and officers of the parent. The Supreme Court held that the subsidiaries were taxable on the income turned over to the parent, as well as the 6 per cent retained as a return on capital. The Supreme Court said that the Court of Appeals for the Second Circuit correctly held- that: * * * when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise. * * * In the Moline Properties case, supra, the Supreme Court said that whatever the purpose of organizing the corporation “so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a ‘separate taxable entity’.” Therefore, relying on the Supreme Court’s decisions in the National Carbide Corp. case and the Moline Properties, Inc., case, we hold against respondent’s contention that the corporate entities of the sales companies should not be recognized for tax purposes. 2. Applicability of section 45, I. R. C. — Respondent’s next contention is that even though the separate entities of the sales companies are recognized that nevertheless their respective net incomes should be allocated to petitioner under the provisions of section 45, I. R. C.[1] It is true, of course, that the facts in the instant case show that petitioner and the sales companies were owned and controlled by the same interests and in that respect one of the conditions prescribed by section 45 is present here. But, while that is true, the Commissioner has not distributed, apportioned or allocated gross income, deductions, credits, or allowances between or among such trades or businesses as contemplated by the statute where section 45 is to be applied. On the contrary, respondent has “combined” the “net” income of the sales companies with the “net” income of petitioner. Section 45 does not grant such authority to respondent. In Seminole Flavor Co., 4 T. C. 1215, we said that section 45: * * * does not specifically authorize him “to combine.” Certainly, the Commissioner’s own regulations, section 19.45-1, Regulations 103, negative the use of section 45 for the purpose of combining or consolidating the separate net income of two or more organizations, trades or businesses, * * * Section 29.45-1 of Regulations 111 governing the years here involved is substantially the same as the section in Regulations 103 referred to-by us in the Seminole Flavor Co. case, supra, which reads in part as. follows: * * * It is not intended (except in the case of the computation of consolidated net income under a consolidated return) to effect in any case such a distribution, apportionment, or allocation of gross income, deductions, or any item of either, as would produce a result equivalent to a computation of consolidated net income under section 141. Respondent has not attempted to distribute, apportion, or allocate “deductions, credits, or allowances” between the sales companies and petitioner. On the contrary, we think he has recognized that the books of account accurately reflect the transactions of the companies by using the net income of each sales company, per its books and tax returns, as the exact amount of net income to be included in the net income of petitioner for each taxable year, with the minor exception that for 1945 he increased the net income of each sales company by $312.50 before adding it to the net income of petitioner. In Seminole Flavor Co., supra, we said: * * * The accuracy of the books of account and record is emphasized by the Commissioner’s use of the partnership net profits, per its books, as the exact amount of gross income to be allocated for each taxable year to the petitioner * * * The inapplicability of section 45 as the Commissioner contends it should be applied here appears not only on the face of the statute but also from its interpretation in Miles-Conley Co., 10 T. C. 754. affirmed on other grounds 173 F. 2d 958; Buffalo Meter Co., 10 T. C. 83; and Seminole Flavor Co., supra. As to the applicability of section 45, I. R. C., under the facts of this case we hold against respondent and sustain petitioner. 3. Applicability of section 129, I. R. C.— Respondent contends in the last place that the net income of the sales companies should be taxed to petitioner under the provisions of section 129. I. R. C.[2] There have been two recent cases promulgated by the Tax Court in which the Commissioner sought to apply Section 129, I. R. C. In both of those cases we held that section 129 was not applicable because the taxpayer corporations there involved had been organized for business purposes. See Alcorn Wholesale Co., 16 T. C. 75, and Berland’s Inc. of South Bend, 16 T. C. 182. In our findings of fact in the instant case we have found that: The principal purpose for the organization for each of the sales companies was to carry on business and not to aid petitioner or the sales companies in the evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which the respective corporations would not otherwise enjoy. This finding, we think, disposes of respondent’s contention that section 129 is applicable to the facts of this case. Alcorn Wholesale Co. and Berland's Inc. of South Bend, both supra. Reviewed by the Court. Decisions will he entered under Rule 50. Rice, J., dissents. SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. SEC. 129. ACQUISITIONS MADE TO EVADE OR AVOID INCOME OR EXCESS , PROFITS TAX. (a) Disallowance of Deduction, Credit, or Allowance. — If (1) any person or persons acquire, on or after October 8, 1940, directly or indirectly, control of a corporation, or (2) any corporation acquires, on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately prior to such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income or excess profits tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For the purposes of clauses (1) and (2), control means the ownership of stock possessing at least 50 per centum of the total combined voting power of all classes of stock entitled to vote or at least 50 per centum of the total value of shares of all classes ef stock of the corporation.