CHESTER E. SPANGLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LUCILLE SPANGLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24452, 24603. Promulgated September 10, 1952.

*Herbert W. Clark, Esq.*, and *Leon de Fremery, Esq.*, for the petitioners.

*H. A. Melville, Esq.*, and *Chas. H. Chase, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The only issue in this proceeding is whether the petitioners' exchange of 6 shares of Western States stock for 12 shares of Permian stock is taxable, and, if so, whether as capital gain or as ordinary income. The petitioners contend that the transaction was in pursuance of a plan of reorganization and that no gain or loss is to be recognized. Alternatively, they argue that the distribution was in partial liquidation. Respondent urges that the distribution of Permian stock to the shareholders of Western States was a

taxable property dividend under section 115 (a) of the Internal Revenue Code [1] and, also, that the transaction constituted a redemption of the stock accompanied by a distribution essentially equivalent to a taxable dividend within the meaning of section 115 (g), I. R. C.[2]

The entire transaction consisted of two exchanges. Western States first exchanged its Texas properties and Government bonds for all of Permian's outstanding stock. Section 112 (b) (4), I. R. C.,[3] is applicable to this transaction if the exchange was made by parties to and in pursuance of a plan of reorganization. The subsequent exchange consisted of distributing the Permian stock to the shareholders of Western States for half of their stock in that corporation. Section 112 (b) (3), I. R. C..[4] is applicable here if the distribution of Permian stock for the Western States shares constituted an exchange and if the corporations were parties to and the exchange made in pursuance of a plan of reorganization.

Sections 112 (b) (3) and 112 (b) (4) both require that the exchanges be made in pursuance of a plan of reorganization and involve stocks, securities or property of a corporation a party to a reorganization. A reorganization is defined in section 112 (g) (1) (D) as "a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

 *     *     *     *     *     *     *

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

 *     *     *     *     *     *     *

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 *     *     *     *     *     *     *

(b) EXCHANGES SOLELY IN KIND.—

 *     *     *     *     *     *     *

(4) SAME—GAIN OF CORPORATION.—No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

[4] SEC. 112. RECOGNITION OF GAIN OR LOSS.

 *     *     *     *     *     *     *

(b) EXCHANGES SOLELY IN KIND.—

 *     *     *     *     *     *     *

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

which the assets are transferred  *  *  *." The present transaction meets this definition in that after the transfer of oil properties and bonds for Permian stock Western States controlled the new corporation by the ownership of all of its stock and within 4 months thereafter the shareholders of Western States owned all of the Permian stock.[5] Since the exchange was made as part of the plan of reorganization and both Western States and Permian were parties to the reorganization[6] the exchange falls within the terms of section 112 (b) (4) if there are no other requirements.

The delay of 3 months and 10 days in obtaining the necessary endorsements of trustee's receipts does not preclude the subsequent stock redemption exchange from being in pursuance of the plan of reorganization. The plan had included this distribution of Permian stock as evidenced by the letter to the stockholders. *D. W. Douglas*, 37 B. T. A. 1122. Transfers made pursuant to a plan of reorganization are ordinarily parts of one transaction and should be so treated. *Starr* v. *Commissioner*, 82 F. 2d 964. Since the shares transferred were in corporations which were parties to the reorganization the literal requisites of section 112 (b) (3) have been met and we turn to respondent's arguments.

The respondent concedes that the exchange of oil properties for Permian stock maintained a continuity of interest but denies the existence of the required business purpose. *Gregory* v. *Helvering*, 293 U. S. 465; Regs. 111, sec. 29.112 (g)-1. It is to be noted that the drilling of oil wells upon unproven leaseholds is a different and more speculative business than manufacturing casinghead gasoline on a contract basis. The division of a business carrying on more than one type of operation into independent entities, engaged separately in the same undertakings, has been recognized for tax purposes. *Buffalo Meter Co.*, 10 T. C. 83; *Miles-Conley Co.*, 10 T. C. 754, affirmed 173 F. 2d 958. We are of the opinion that there were adequate financial as well as inherent industrial reasons for separating Western States' oil operations in Texas from the gasoline processing operations in California. Corporate surplus had declined since commencement

---

[5] SEC. 112. RECOGNITION OF GAIN OR LOSS.

*     *     *     *     *     *     *

(h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

[6] SEC. 112. RECOGNITION OF GAIN OR LOSS.

*     *     *     *     *     *     *

(g) DEFINITION OF REORGANIZATION.—As used in this section (other than subsection (b) (10) and subsection (1)) and in section 113 (other than subsection (a) (22))—

*     *     *     *     *     *     *

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

of the Texas operations, and, although it remained over $1,000,000, dividends had declined until none were paid in 1942. Earnings from California operations were insufficient to cover the operating losses from the Texas properties in 1941 and 1942. The allowable production of oil and ability to ship oil were curtailed by the small pipeline outlet. The threat of necessarily making sizeable drilling expenditures if oil was struck by competitors on adjacent leaseholds existed at the same time that Western States was required to process, in wartime, all the gas offered by their contractual customers in California. The possibility of a new processing plant being built by others to offset the demand upon Western States' facilities was diminished because of the difficulties in procuring necessary materials in time of war.

After Permian was formed, it increased its output and prospered. Had it been known in advance that it would prove so successful, the same financial reasons of avoiding a drain upon Western States' resources might not have existed. However, it could not be foreseen with accuracy if and when pipeline facilities could be obtained following the entry of the United States into the war in 1941. It was uneconomical to drain off California earnings to drill more oil wells at a time when the oil could not be shipped. Since Western States' accounting difficulties could have been overcome by providing local accounting for that corporation, we do not believe that accounting and managerial reasons necessitated the separation. Local management existed to some extent since the president of Western States lived at the site of the Texas operations. However, it is also true that if the Texas operations produced taxable income Western States would have to prorate its income for the California franchise tax.

Permian was financed with $400,000 in Government bonds and, if it was thought worth while to expand Permian's drilling operations, new capital might be required. Western States wished to avoid the necessity of guaranteeing loans sought by the new corporation as a subsidiary and, for this reason, the Permian stock was distributed to Western States' shareholders. As it turned out, Permian did not need to cash all the bonds for working capital. But this is known only with the benefit of hindsight.

Another business reason for the distribution of Permian stock to the shareholders of Western States is that this distribution avoided the subjection of dividends paid by Permian to the California franchise tax.

Upon all the facts, it appears that the reorganization of the two types of operations into separate corporate entities, possessed the necessary business purpose and was not "* * * merely a vehicle, however elaborate or elegant, for conveying earnings from accumulations to the stockholders." *Bazley* v. *Commissioner*, 331 U. S. 737,

743. The separation continued the same two businesses under a changed form which was introduced for reasons "* * * germane to the conduct of the venture in hand." *Helvering* v. *Gregory*, 69 F. 2d 809.

The respondent contends that because the shareholders of Western States maintained the same proportional interests in Western States before and after the pro rata redemption they gave up nothing in giving back half of their stock. Nothing, therefore, it is said, was received by Western States to constitute an exchange within the meaning of section 112 (b) (3). We do not so construe the statute nor do we agree with respondent that the distribution was a dividend within the purview of section 115 (a). The distribution of assets held by the corporation for half of its outstanding stock was much the same as a distribution in partial liquidation under sections 115 (c) and 115 (i), I. R. C.[7] The existence of earnings and profits does not preclude a partial liquidation. *Joseph W. Imler*, 11 T. C. 836. The exchange of stock for the distribution is the difference between a taxable dividend and a partial liquidation in such an instance, but the pro rata exchange does not alter the shareholders' proportional interests. In so far as sections 115 (c) and 115 (i) are applied, the distribution here in question qualifies as a partial liquidation. As such, "* * * amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *." Thus, section 115 (c) limits recognition of gain or loss to the distributee of a partial liquidation to the extent provided in section 112. A partial liquidation in which no gain or loss is recognized because of section 112 (b) would, of necessity, be the type of reorganization we have here. Similar pro rata distributions of stock and reduction of capitalization by the distributing corporation qualified as exchanges under section 112 (b) (3). *Hortense A. Menefee*, 46 B. T. A. 865; *W. N. Fry*, 5 T. C. 1058.

---

[7] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. \* \* \*

\* \* \* \* \* \* \*

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

Nor do we agree with respondent's argument that the distribution was essentially equivalent to a dividend under section 115 (g). Although there is no established weighted formula to resolve this issue, *Flanagan* v. *Helvering*, 116 F. 2d 937, the determinative criteria set forth in *Joseph W. Imler*, *supra*, do not bring us to that conclusion. There was a valid business purpose in separating the speculative Texas oil venture from the California operations. The motive in distributing the Permian stock was to keep control of the new corporation in the hands of the same stockholders. The surplus of Western States which had declined since 1938 remained over $1,000,000 after the reorganization. The past dividend policy had been liberal, and the significant special circumstances attending the distribution was the creation of a new entity for the oil business to be owned by the same interests. A dividend would not achieve this end. Section 115 (g) being inapplicable, we conclude that the literal and substantive requirements of the statute have been met.

A further argument by respondent is based upon the legislative history of the statute. It is said that a reorganization in which part of the assets of a corporation are transferred for stock in a new corporation, following which the original corporation distributes this stock to its shareholders, receiving at the same time a pro rata portion of its own stock, is termed a "split-off." This type of reorganization, it is contended, is indistinguishable from a "spin-off" which Congress intended to tax. The reorganization in question here is said to be a "split-off," differing from a "spin-off" only by the fact that in the "spin-off" the stock in the new corporation is distributed by the original corporation without surrender of stock by its shareholders. A "spin-off" type of divisive reorganization is said to have been held taxable in *Rockefeller* v. *United States*, 257 U. S. 176. Because a similar result could be obtained without tax under the then existent statute by means of a "split-up," wherein two new corporations are created to which the original company transfers its assets for their stock which is then distributed to its shareholders in exchange for stock of the original corporation, Congress, in 1924, granted nonrecognition to the distributee in "spin-offs." 1939-1 C. B. (Part 1) 251, 276. Section 203 (c) of the Revenue Act of 1924 provided, as follows:

RECOGNITION OF GAIN OR LOSS FROM SALES AND EXCHANGES.

SEC. 203. * * *

(c) If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

In 1934 this provision was eliminated and the "spin-off" lost its nonrecognition status. *Samuel L. Slover*, 6 T. C. 884. Respondent urges that because the pro rata redemption of shareholders' stock in a "split-off" is without economic effect, it is meaningless and the transaction must be treated as if it were a "spin-off." The lack of economic effect may exist, but if Congress has designated the distinction for tax purposes upon the basis of an exchange, we need not look for others. The exchange of stock for stock in the pro rata redemption meets the concept of an exchange as used in the statute and in the *Fry* and *Menefee* decisions. The existence of the exchange distinguishes the present facts from the "spin-off" and places them within the statutory rule for nonrecognition.

We find further evidence of this conclusion in the definition of a reorganization in section 112 (g) (1) (D). A statutory reorganization results if both the transferor and its shareholders are in control of the transferee immediately after the transfer. For this to occur, the transferee must either make the exchange of its stock for the transferor's assets with both the transferor and its shareholders or else the transferee must exchange its stock for the assets with the transferor which then distributes the stock to its shareholders. The latter transaction includes "split-ups," "spin-offs," and "split-offs" within its scope. The respondent concedes the nonrecognition of gain or loss in the "split-up." The "split-off" meets the requisites of sections 112 (b) (3) and 112 (b) (4) because there are two exchanges as in the "split-up." The "spin-off" does not meet the requirements of section 112 (b) (3) because there is no exchange of stock or securities for stock or securities.

Upon this basis we can but conclude that the petitioners received the stock in a reorganization in which there is no recognition of gain or loss. Petitioners' alternative argument need not be considered.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*