YATES HOLDING CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yates Holding Corp. v. Commissioner
Docket No. 8240-78.
United States Tax Court
T.C. Memo 1979-416; 1979 Tax Ct. Memo LEXIS 108; 39 T.C.M. (CCH) 303; T.C.M. (RIA) 79416; October 3, 1979, Filed David K. Diebold, for the petitioner. Anthony Bruce, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined *109 the following deficiencies in petitioner's Federal income taxes: Year
Deficiency
1972
$ 5,953
1973
6,927
1974
17,009
1975
5,932
The only issue presented is whether a transaction in which petitioner as mortgagee received half of the outstanding balance of a mortgage constituted a compromise of a debt resulting in an ordinary loss or constituted a sale or exchange resulting in a capital loss. All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The pertinent facts are summarized below. Yates Holding Corporation (hereinafter petitioner) is a holding corporation organized under the laws of the State of New York. At the time petitioner filed its petition in this case its office and principal place of business were located in Buffalo, New York. Petitioner filed its 1972, 1973, 1974, and 1975 corporate income tax returns with the North Atlantic Service Center, Andover, Massachusetts. Prior to September 11, 1962, the Lafayette Hotel, a commercial hotel located in downtown Buffalo, New York, was owned by the Lafayette Hotel Corporation. On September 11, 1962, the *110 hotel was sold by the Lafayette Hotel Corporation to King Hotels, Inc. (hereinafter King) for consideration consisting in part of a purchase money second mortgage in the amount of $340,500. In 1963, the assets of the Lafayette Hotel Corporation, including the purchase money second mortgage, were transferred to petitioner under the provisions of section 351, Internal Revenue Code of 1954. [1]
Starting in 1971, King began encountering financial difficulties and sustained large operating losses from 1971 through 1974. During 1974, King found it necessary to make extensive renovations to the Lafayette Hotel. However, because of its prior financial losses King found that it could not pay for the renovations and remain current with its payments of principal and interest on the purchase money mortgage held by petitioner. Accordingly, at the request of King, Marvin S. Lynn (hereinafter Lynn), a vice president of King Hotels, Inc., met with petitioner's representative, Richard Brennan, and entered into negotiations which resulted *111 on March 6, 1975 in the signing of a Modification and Extension Agreement. This agreement relieved King from the obligation to make the then delinquent payments and any other payments of principal until May 31, 1976, and from the obligation to make one-half of the payments of interest for the period from December 1, 1974, to February 28, 1976, until November 30, 1977. Subsequent to the execution of the Modification and Extension Agreement, and in view of a further deterioration in its financial condition, King again approached petitioner and offered to compromise the mortgage for a payment of $134,000, half the amount of the principal balance still owing as of December, 1974. Petitioner agreed in principle to accept King's offer. King made no payments in accordance with the Modification and Extension Agreement. On May 29, 1975, petitioner's board of directors held a special meeting to consider King's offer. [2] At the special meeting, a majority of the Board passed a resolution accepting the offer in compromise. [3] A mortgage discharge was thereafter prepared in accordance with King's terms, but was never executed on behalf of petitioner, never delivered to King and never *112 filed. *113 Prior to the consummation of the anticipated compromise, several stockholders of King formed an independent partnership, known as AMHO Associates (hereinafter AMHO). Subsequent to the May 29, 1975, stockholders' meeting, and prior to June 3, 1975, Lynn requested that petitioner assign the mortgage to AMHO for $134,000, the amount for which petitioner and King had previously agreed to compromise the mortgage. On June 3, 1975, AMHO, trading as Hotel Empire, tendered to petitioner a check signed by Lynn and another person for $134,000. Petitioner, at that time, executed and delivered to AMHO an assignment of mortgage which was duly filed by AMHO in the proper county land records office. [4]
*114 We must decide whether this transaction was a compromise of the mortgagor's debt resulting in an ordinary loss under section 165(a) or was a sale or exchange resulting in a capital loss under section 165(f). The compromise of a debt for less than its face value does not constitute a sale or exchange of capital assets. Hale v. Helvering,85 F.2d 819 (D.C. Cir. 1936); Bingham v. Commissioner,105 F.2d 971 (2d Cir. 1939); West Coast Securities Co. v. Commissioner,14 T.C. 947 (1950). A compromise of a debt for less than the value outstanding will generally give rise to an ordinary loss deductible under section 165(a) by a corporate mortgagee. The sale or assignment of a debt or mortgage which is a capital asset in the hands of the holder for less than the value outstanding gives rise to a capital loss in accordance with the provisions of sections 1001 and 165(f). See West Coast Securities Co. v. Commissioner,supra at 961. Petitioner argues that its negotiations with King to secure some payment on the mortgage *115 it held, its resolution accepting the terms of discharge proposed by King, and the final realization of the $134,000 should be viewed in their entirety as the compromise of debt. In this regard the petitioner asserts that its subsequent assignment of the mortgage to AMHO for $134,000 rather than a discharge of King for that amount should not change the substance of the earlier planned transaction. Petitioner's contention that we ignore the fact of its assignment to AMHO stems from its belief that AMHO was in effect the same entity as King and thus the "sale" to AMHO was in reality a discharge of King. Petitioner also maintains that the substance of the assignment must remain as a compromise of debt since petitioner was allegedly in an unfavorable bargaining position with the defaulting King. Because of this, petitioner asserts the assignment was but a step in a series of transactions designed and executed as a part of a unitary plan to achieve the intended result of a compromise of the debt. See Kanawha Gas & Utilities Co. v. Commissioner,214 F.2d 685, 691 (5th Cir. 1954). Respondent, on the other hand, contends that petitioner and its mortgagor, King, negotiated *116 over a lengthy period for a compromise of a $268,000 mortgage and ultimately agreed to compromise it for $134,000. However, prior to the execution of the discharge, some of King's shareholders formed AMHO, a partnership, and requested petitioner to assign the mortgage to the partnership for $134,000. Petitioner acceded to the request. In respondent's view this assignment constitutes a sale or exchange resulting in a $134,000 capital loss. Respondent contends that the earlier planned discharge does not change the form and substance of the assignment, especially where petitioner did not offer any evidence or testimony from representatives of King and AMHO as to their intent in restructuring the originally contemplated discharge of the corporate mortgagor into an assignment to a partnership comprised of some of the mortgagor's shareholders. We agree with respondent. Although we concur in petitioner's statement that in tax matters substance should take precedence over form, Commissioner v. Court Holding Co.,324 U.S. 331 (1945), Helvering v. Clifford,309 U.S. 331 (1940), *117 Higgins v. Smith,308 U.S. 473 (1940), Gregory v. Helvering,293 U.S. 465 (1935), we are unable to interpret the facts presented to us in a manner that comports with its views. Essentially, petitioner views the substance of the transaction as the compromise of debt, asserting that AMHO was in effect the same entity as King since (1) some of King's shareholders were partners in AMHO and (2) the same individual who negotiated on behalf of King negotiated on behalf of AMHO. We are unable to conclude that the partnership was the same entity as the corporation. The stipulation of facts submitted in this case offers only the barest information concerning the relationship between the AMHO and King. It discloses merely that "several stockholders of King formed an independent partnership known as AMHO Associates," and that Marvin Lynn negotiated the prospective compromise in his capacity as Vice-President of King Hotels, Inc. and, then later, negotiated the actual assignment in his capacity as a representative of AMHO Associates. The fact that some of the shareholders of King Hotel, Inc. may also be partners in AMHO Associates, trading as Hotel Empire, *118 does not mean the two entities should be disregarded and treated as one for tax purposes. Ross v. Commissioner,129 F.2d 310 (5th Cir. 1942). Nor does the fact that an individual may wear two hats in two different organizations mean the entities should be combined for tax purposes. Seminole Flavor Co. v. Commissioner,4 T.C. 1215 (1945). Petitioner was aware that it was dealing with a different entity from its mortgagor when it executed the assignment to AMHO rather than the discharge of the mortgage to King Hotels, Inc.
Petitioner adduced no evidence at trial to demonstrate that the partnership was merely a conduit or straw for King. Nor did it present any evidence concerning the business purpose of AMHO in its relationship with King. Petitioner has not persuaded us that AMHO is the same entity as King. In this regard we note that case law traditionally recognizes the separateness of a business enterprise where there is a substantial business or economic purpose behind its formation and operation. Ross v. Commissioner,supra.This is true whether the business enterprise is a corporation or a partnership. Seminole Flavor Co. v. Commissioner,supra at 1234. *119 Accord, Meldrum & Fewsmith, Inc. v. Commissioner,20 T.C. 790 (1953), affd. 230 F.2d 283 (6th Cir. 1956); Campbell County State Bank, Inc. v. Commissioner,37 T.C. 430 (1961), revd. on other grounds, 311 F.2d 374 (8th Cir. 1963); Miles-Conley Co. v. Commissioner,10 T.C. 754 (1948), affd. 173 F.2d 958 (4th Cir. 1949). Petitioner also contends that it should not be penalized because it sought to protect what it could of the debt by the only means offered to it by Lynn. This contention appears inconsistent with its earlier argument that the assignment should be viewed as only a step in a series of transactions designed and executed to compromise the debt. It is true that petitioner received $134,000, the amount it had bargained for with King, but it was received from AMHO in consideration for an assignment of the King mortgage and not from King for a discharge of its own mortgage. Petitioner has provided us no evidence as to any master plan. The protestations of one of the parties to a transaction as to its bargaining position cannot ordinarily change the determination of whether a *120 sale occurred, especially in the face of a stipulated fact that the other party tendered a check to petitioner at which time it executed and delivered an assignment of mortgage to the other party. In advancing a substance over form argument, petitioner bears the burden of proving by a preponderance of the evidence that the transaction was in reality something else than what it appears to be in form. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner has failed to show that the sale of the mortgage to the AMHO partnership was anything other than a sale or exchange within the meaning of section 1001. "Substance over form" is not a talismanic incantation that will transform or recast an event. Rather, it is a doctrine which depends upon the presentation of facts sufficient in quantity and quality to establish the "true nature of a transaction" and strip away the disguise of "mere formalisms, which exist solely to alter tax liabilities." Commissioner v. Court Holding Co.,324 U.S. 331 (1945). *121 We hold that the transaction was a sale by petitioner to Amho/, a separate and independent partnership, and was not a compromise of debt between petitioner and King Hotels, Inc., its mortgagor. Therefore, the loss attributable to the sale was a capital loss. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect in the years at issue, unless otherwise stated.↩
2. The minutes of the meeting state in part: The meeting was called to order by Mr. Richard Brennan who acted as chairman and explained that the purpose of the meeting was to consider an offer, made subsequent to the last regular meeting of directors on May 9th, by [Kings] Hotels Inc. to settle the balance of the company's second mortgage on the Lafayette Hotel for a total amount of $134,000 plus interest. This sum amounts to 50% of the total sum remaining due on the mortgage by King Hotels, Inc.
The chairman explained the precarious position of [Kings] Hotels and that the company had no protection in the event of default on the second mortgage or on the first mortgage held in the amount of $190,000 by the Erie County Savings Bank. He further referred to the memorandum from Harry D. Yates, made a part of the minutes of the stockholders' meeting on May 9th, detailing the default of [Kings] Hotels, Inc. on its mortgages on the Wellington Hotel in Albany and the consequent loss of equity by both mortgage holders. Mr. Brennan further stated that a counter offer to accept 65% of the balance due from [Kings] Hotels had been made but that this had been turned down, and that two further attempts at negotiations had proven fruitless. Mr. Diebold states that acceptance of this offer and the resulting reduction of the company's assets would, however, entitle the company to an immediate cash refund of $40,000 in Federal taxes paid, and that a credit of approximately $95,000 against future Federal taxes would be established and that the company would have five years to use this credit. After full and complete discussion of the situation it was the unanimous opinion of all directors that the offer from [Kings] Hotels should be accepted. Upon motion by Henry Erb II, seconded by Harry Yates II and affirmed by all present, the attached resolution was adopted. * * * ↩
3. The resolution states in part as follows: SPECIAL MEETING OF THE BOARD OF DIRECTORS OF YATES HOLDING CORPORATION May 29, 1975 WHEREAS, this Corporation is presently the holder of a certain Note and Mortgage made by King Hotels, Inc. of 250 West 43rd Street, New York, New York 10036 (hereinafter "Mortgagor") to Lafayette Hotel Company in the principal sum of $340,500., dated November 30, 1962, and recorded in the Erie County Clerk's Office in Liber 6271 of Mortgages, Page 257, which Note and Mortgage were thereafter assigned to Yates Holding Corporation by Assignment dated August 30, 1963, and recorded in Liber 6350 of Mortgages at Page 545 in the Erie County Clerk's Office, and which Mortgage is a valid lien on the premises therein described, and WHEREAS, on March 6, 1975, at which date there was owed on the Note and Mortgage the principal sum of $268,000., there was signed, at the sole request of the Mortgagor, a Modification and Extension Agreement whereby certain provisions in the said Note and Mortgage were modified and extended for the benefit of the said Mortgagor and upon the representation of the said Mortgagor to the effect that such modification and extension were necessitated by the financial situation of the Mortgagor; and WHEREAS, as of the date of this meeting, the present principal balance of the said Note and Mortgage amounts to $268,000., and the amount of interest now due and owing on the said principal now totals approximately $1,712.22; and WHEREAS, this Board of Directors has learned that the financial situation and prospects of the said Mortgagor are presently sufficiently unstable as to warrant serious concern for the continue viability of the said Mortgagor and, consequently, for the continued ability of the Mortgagor to continue payments of principal and interest on the said Note and Mortgage as required by the terms thereof and by the terms and conditions of the aforesaid Modification and Extension Agreement of March 6, 1975; and WHEREAS, the Mortgagor has now offered to make final remittance of the sum of principal and interest now due and owing on the said Mortgage, i.e. approximately $269,712.22 [sic] at the rate of $.50 for every dollar of principal thus owed, together with payment of the full amount of interest now due and owing ($1,712.22), for a total net cash payment of $135,712.22, in return for a complete discharge of the said Note and Mortgage (hereinafter the "Offer of Discharge"); and WHEREAS, the Board of Directors of this Corporation has undertaken investigation into the financial stability of the Mortgagor and the present value of the Note and Mortgage and has fully discussed the situation and the consequent advisability of accepting the Offer of Discharge; be it RESOLVED, that in view of the financial situation of the Mortgagor and the Offer of Discharge presently before this Board, this Corporation undertake all such actions and do all things necessary to effect the acceptance of the said Offer of Discharge, namely the present acceptance of $.50 for every dollar of principal now owed on the said Note and Mortgage, together with payment of the full amount of interest now due and owing ($1,712.22); and FURTHER RESOLVED, that the officers of this Corporation be, and the same hereby are, authorized in the name and on behalf of this Corporation to do and perform any and all acts and things as may in their discretion be necessary and appropriate to implement and generally to effectuate and complete the acceptance of the Offer of Discharge and the resultant discharge of the said Note and Mortgage, in accordance with the terms and tenets of these Resolutions; and FURTHER RESOLVED, that anything contained in these Resolutions to the contrary notwithstanding, the officers of this Corporation be, and the same hereby are, authorized in their sole discretion hereafter to reject the Mortgagor's Offer of Discharge and/or do any and all other such acts or things as may in their sole discretion be necessary and appropriate to stabilize and protect the interests of this Corporation in the said Note and Mortgage and especially in the sums of money now due and owing for principal and interest on the said Note and Mortgage. The undersigned directors, being a majority of all of the directors of the Yates Holding Corporation, hereby certify that the foregoing Resolutions were presented to them, and discussed at, the Special Meeting of Directors held on May 29, 1975 and, upon motion duly made and seconded, ratified and adopted by them at said meeting. * * *↩
4. ASSIGNMENT OF MORTGAGE KNOW that Yates Holding Corp., a domestic corporation with offices at 17 Court Street, Buffalo, New York 14202, assignor, in consideration of One Dollar and More ( $1 & more) paid by AMHO Associates, a New York partnership with offices at 250 West 43rd Street, New York, New York 10036, assignee, hereby assigns unto the assignee, a certain mortgage made by KING HOTELS, INCORPORATED to LAFAYETTE HOTEL COMPANY, given to secure payment of the sum of $340,500.00 dated the 30th day of November, 1962 and recorded on the 30th day of November, 1962 in the Office of the Clerk of the County of Erie in Liber 6271 of Mortgages at page 257 covering premises which mortgage was subsequently assigned by LEFAYETTE HOTEL COMPANY to YATES HOLDING CORP. by assignment dated August 30, 1963 and recorded in the Office of the Clerk of the County of Erie in Liber 6350 of Mortgages at page 545 on August 30, 1963, together with the bond or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest. To have and to hold the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever. And the assignor covenants that there is now due and owing upon the said mortgage, without offset or defense of any kind, the principal sum of Two hundred sixty-eight thousand ($268,000.00) dollars, with interest thereon in accordance with a modification and extension agreement by and between KING HOTELS, INCORPORATED and YATES HOLDING CORP. dated the 6th day of March, 1975 which agreement was recorded in the Office of the Clerk of the County of Erie on the 27th day of March, 1975 in Liber 8264 of Deeds at page 491. This assignment is made without recourse to the assignor herein. In Witness Whereof, the assignor has caused its corporate Seal to be hereunto affixed, and these presents to be signed by its duly authorized officer this 4th day of June, Nineteen Hundred and Seventy-Five. * * *↩