COMMERCIAL IRON WORKS v. COMMISSIONER OF INTERNAL REVENUE.

BARNES v. SAME.

COTTON'S ESTATE v. SAME.

No. 12011.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1948.

Rehearing Denied March 18, 1948.

W. J. Knight, of Houston, Tex., for Taxpayers.

Theron L. Caudle, Asst. Atty. Gen., Austin Hoyt, Sewall Key, Helen R. Carloss, A. F. Prescott and Louise Foster, Sp. Assts. to the Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The Commercial Iron Works was incorporated under the laws of Texas in 1936, with John L. Barnes and Cyrus R. Cotton each owning fifty per cent. of its capital stock. Barnes has been president and Cotton vice president ever since.

The corporation engaged in the fabrication of steel from its inception until its dissolution on April 29, 1942, whereupon its assets were transferred to its two stockholders, who assumed all of its liabilities, and who, as transferees, are admittedly liable for any taxes that may be due by the corporation.

The payments as salaries to Barnes and Cotton from the date of the organization of the corporation until February 28, 1942, are as follows:

| Fiscal year | Total | Ratio of officers' salaries to gross sales | John L. Barnes | Cyrus R. Cotton |
|---|---|---|---|---|
| 2/28/37 | $ 3,750.00 | 32% | $ 3,750.00 | ........ |
| 2/28/38 | 9,200.00 | 36% | 5,500.00 | $ 3,700.00 |
| 2/28/39 | 10,800.00 | 38% | 5,400.00 | 5,400.00 |
| 2/28/40 | 6,300.00 | 25% | 2,700.00 | 3,600.00 |
| 2/28/41 | 7,200.00 | 21% | 3,600.00 | 3,600.00 |
| 2/28/42 | 59,500.00 | 65% | 40,000.00 | 19,500.00 |

The $40,000.00 credited to Barnes on February 28, 1942, contained $3,000.00 as salary from March 1, 1941, to December 31, 1941, and $5,000.00 as salary from January 1, 1942, to February 28, 1942. The remaining $32,000.00 was designated as payment for extraordinary services by Barnes for prior years, according to an authorization in a resolution which Barnes and Cotton, as the Board of Directors, passed on December 15, 1941. Likewise, the $19,500.00 credited to Cotton included $3,000.00 of back salary from March 1, 1941, to December 31, 1941, $2,500.00 for salary from January 1, 1942, to February 28, 1942, and the remaining $14,000.00 was for compensation for extraordinary services during prior years. The amounts so credited to Barnes and Cotton in the tax year were paid through obligations of the corporation executed to them, which were in turn surrendered in exchange for the transfer of the assets to Barnes and Cotton upon dissolution of the corporation.

The Tax Court found that Barnes, before the organization of the petitioner, had had some ten years' experience as a steel fabricator and was a capable executive. Cotton was a lawyer of ability, possessed of substantial means. Both devoted their full time to the business which, because of efficient management, increased yearly until the year 1941, when its productive capacity was greatly enhanced and likewise its prospect of earnings. From the time of the creation of the corporation through the fiscal year 1941-1942 the corporation had never paid any dividends and during the whole five years had paid only $48.85 as income tax. In 1942 it paid an income tax of $1,028.87 after taking the deduction of $59,500.00 as salaries of Barnes and Cotton.

The Commissioner disallowed all salaries to Barnes and Cotton in excess of $22,500.00, holding that $15,000.00 to Barnes and $7,500.00 to Cotton was reasonable for their services. By virtue of the disallowance of this $37,000.00 there accrued the following deficiencies for the fiscal tax year ending February 28, 1942; (1) income tax liability in the amount of $6,476.40; (2) declared value excess profits tax liability in the amount of $785.36; (3) excess profits tax liability of $12,124.77; or a total deficiency of $19,386.53.

Sec. 23(a) of the Internal Revenue Code allows deductions for trade or business expense of "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *." 26 U.S.C.A. Int.Rev. Code, § 23(a).

The Tax Court found: "* * * that both Barnes and Cotton were very efficient hard-working executives and that if the labors they performed from 1937 to 1941, inclusive, had been in a field of greater income possibilities, their efforts might well have deserved a higher reward than that which they actually received."

It called attention to the fact that the officers annually drew every penny of salary that the income of their corporation would permit. The Court made comparisons of profit and loss statements for each year of the existence of the corporation, as well as comparisons between the yearly salaries of the officers in relation to the annual income, and concluded that the proportion of the salary to the gross profits in the tax year compared favorably with such percentages in the two previous years. The Court summarized its conclusion with the following statement: "We also find that the allowance of a salary deduction of $15,000 for Barnes and $7,500 for Cotton for the fiscal year ending February 28, 1942, allowed by the Commissioner is very generous under the facts in this case. This amount trebles the salary fixed by the petitioner for the previous year when the gross profits of the corporation were somewhat less than three times as great as the profits of the previous year, and when the gross sales were approximately twice the amount of the previous year. This salary, furthermore, is 24 percent of the gross profits. In 1940 the salary was 25 percent of the gross profits and in 1941 it was 21 percent of the gross profits."

■ We think that the issue in this case is one of fact, and that The Tax Court was the trier of those facts. The test fixed by the statute as to the salary allowances that are deductible from gross income is the test of reasonableness. In undertaking to ascertain what is reasonable, The Tax

224

Court took into consideration: (a) the comparison between salaries and profits of prior years with the salaries and profits of the tax year; (b) the type and quality of service performed by the officers; (c) the fact that the officers were the sole stockholders, whose resolutions as directors in fixing the stock might not always represent such arm's length transactions as would appertain in a corporation where the stock was widely held; (d) whether or not the dividend record of the corporation gives color to the view that the policy of the corporation was to distribute profits in the way of salaries to the sole stockholders rather than in the form of dividends; (e) the salary ordinarily paid for similar services; (f) whether or not the salaries and compensation paid were in proportion to the stock holdings of the officers; and (g) whether or not the dominant motive in fixing salaries greatly out of proportion to salaries theretofore paid might have been the reduction of corporate taxes.

It is not, however, for us to determine what salary we would have allowed had we been the trier of the facts. The fact that we might have allowed compensation in excess of that allowed by the Commissioner and approved by The Tax Court is not the question; but the question is whether or not the findings of the Tax Court are supported by the evidence. It considered and discussed the evidence before it and found that the $15,000.00 salary of a capable executive with ten years' experience as a steel fabricator and a $7,500.00 salary to a lawyer of ability, who devoted their full time and energies to their employer, were not only reasonable "but generous".

The point is often made in tax cases that the fixing of salaries of the sole stockholders between themselves and the corporation is not an arm's length transaction and, therefore, should be carefully scrutinized, but as apposite to this it would also appear that the taxgatherers ought, in appropriate cases, to consider the fact that the sole stockholders often not only risk their capital and their credit, but also the loss of their time and effort, knowing full well that the corporation must first earn their salaries before they can be paid, and that the salaries of all other employees must be paid before theirs, and to that extent their salaries are, more or less, contingent. Generally, contingent compensation is expected to be larger than compensation that is fixed and definite. It would not seem to be an unreasonable business practice for an employer to recognize and reward sacrifices made by employees in the hard, formative days by granting a more generous compensation in the days that are lush. Neither the statutes nor the regulations seem to require that this be done, unless they impliedly contain the concept that that which is right and that which is just would also be reasonable.

Nevertheless, we cannot say there is no support in the record for the findings of The Tax Court, and its judgments is, therefore, affirmed.