**MILES–CONLEY CO., Inc. v. COMMIS-SIONER OF INTERNAL REVENUE.**

No. 5835.

United States Court of Appeals
Fourth Circuit.

April 2, 1949.

Joshua W. Miles and George Ross Veazey, both of Baltimore, Md., for petitioner.

Sumner M. Redstone, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case arises on petition by the taxpayer, Miles-Conley Company, Inc., to review a decision of the Tax Court of the United States upholding a determination by the Commissioner of Internal Revenue of deficiencies in the taxpayer's income and excess profits taxes for the years 1942, 1943 and 1944. The deficiencies result from the Commissioner's disallowance as deductions from gross income of a portion of the salary paid to A. Carlisle Miles, Taxpayer's President and sole stockholder, for each of the tax years in question.

The applicable section of the Internal Revenue Code, 26 U.S.C.A. § 23, provides in part:

"Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses. ,

"(1) Trade or business expenses.

"(A) In General. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

Since what is "a reasonable allowance for salaries" depends upon the peculiar circumstances of each case, it is necessary to set out in some detail the facts here, as found by the Court below.

In 1914, A. Carlisle Miles began his career in the produce industry, buying and selling fruits and vegetables and inspecting produce as an employee of the Miles Company of Dubois, Pennsylvania. After service in the First World War and travel for a time in the employ of a packing company, Miles, in 1920, decided that there was opportunity for a produce business in Baltimore, Maryland.

In 1921, Miles and five other individuals organized the Miles-Conley Company, Inc., the Taxpayer herein. The original capital investment was $10,000 and the corporate purpose was to act as a commission merchant and wholesaler in the produce industry. In 1923, the interests of three of the stockholders were purchased by the three remaining incorporators. In 1924, the capital of the corporation was increased to $40,000.

Miles purchased the two remaining outstanding interests in the corporation in 1936. Thereafter, he conducted the business alone. He has been President of the corporation since 1922. He owns all of the shares of its capital stock, which are issued in his name, with the exception of two qualifying shares issued to members of his family. Miles and his two brothers constitute the board of directors. Miles solicited virtually all of the business secured by the corporation. He personally handles all of the corporation's carloads of produce on consignment or for the corporation's own account. Miles also acts as the general manager, in addition to handling the produce. He secures all supplies and sees that the merchandise is properly handled and accounted for. He protects shippers against claims and delays in transit and generally supervises the products entrusted to him. Miles exercises, and exercised during the taxable years, complete control over the activities of the corporation.

Taxpayer's gross sales for these years were: 1942—$842,205.89; 1943—$1,249,488.90; 1944—$1,105,595.02. Its net incomes, after payment of all salaries including Miles', were: 1942—$6,357.90; 1943—$37,021.06; 1944—$12,934.35.

A deduction of $24,000 was claimed by Taxpayer during each of the years in question for salary paid to Miles as President. The Commissioner determined a reasonable compensation for Miles' services to be $15,000 for each of the years 1942 and 1943, and $10,000 for the year 1944. It is from the decision of the Tax Court upholding these determinations that this appeal to us has been taken.

It is always difficult to determine upon any involved set of facts, such as this,

what is a "reasonable compensation" for services rendered. The statute does not —and of course could not—establish any precise criteria or any exact standards of universal application. The Commissioner's determination as to what constituted a reasonable compensation to A. Carlisle Miles, however, carried with it a clear presumption of correctness and the burden was upon Taxpayer to show error in that determination. Ecco High Frequency Corp. v. Commissioner, 2 Cir., 167 F.2d 583, certiorari denied 335 U.S. 825, 69 S.Ct. 49; Miller Mfg. Co. v. Commissioner, 4 Cir., 149 F.2d 421; Crescent Bed Co., Inc. v. Commissioner, 5 Cir., 133 F.2d 424. And where a taxpayer's evidence is so equivocal or tenuous as not to afford a satisfactory basis for determining the value of the services rendered or the reasonableness of the compensation, the Tax Court may hold that the taxpayer has failed to sustain this burden. National Weeklies, Inc. v. Commissioner, 8 Cir., 137 F.2d 39; cf. Mahler v. Commissioner, 2 Cir., 119 F.2d 869, certiorari denied 314 U.S. 660, 62 S.Ct. 114, 86 L.Ed. 529. That was the precise basis of the decision below. See 10 T.C. 754.

■ The Tax Court expressly found: "A reasonable compensation for the services of petitioner's president during each of the taxable years was not in excess of the amount determined by respondent." This finding, essentially one of fact, may not be disturbed on appeal unless clearly erroneous. 26 U.S.C.A. § 1141(a), as amended by Section 36 of the Act of June 25, 1948, Public Law 773, 80th Cong., 2d Sess., 62 Stat. 991; Federal Rules of Civil Procedure, Rule 52, 28 U.S.C.A.

We find no basis for holding the decision below clearly erroneous.

■ The salary paid by a corporation to its president, who is also the sole owner, is always subject to close scrutiny in order that what is really a distribution of profits may not be passed off as payment of compensation. Ecco High Frequency Corp. v. Commissioner, supra; Commercial Iron Works v. Commissioner, 5 Cir., 166 F.2d 221; Long Island Drug Co. v. Commissioner, 2 Cir., 111 F.2d 593 certiorari denied 311 U.S. 680, 61 S.Ct. 49, 85 L.Ed. 438. There is nothing in the present record to indicate that Taxpayer ever paid a dividend, and Taxpayer's income tax returns show positively that no dividends were paid for the years 1938 to 1944 although substantial sums were available for distribution at least in the years 1942 to 1944. Further, of a total $128,313.31 available out of Taxpayer's combined income for 1942, 1943 and 1944, after payment of all other expenses, $72,000 (or about 60%) was withdrawn from the corporation in salaries to Miles.

Also significant, in this connection, is an analysis of Miles' salaries in prior years as compared to the salaries claimed in 1942, 1943 and 1944. Prior to 1942, those salaries varied from $3,975 to $13,950; and as late as 1940 (a deficit year for the Taxpayer), Miles had withdrawn as salary only $3,975. Yet in 1942, 1943 and 1944, years of relatively high profit for Taxpayer, Miles claimed as salary $24,000 a year. This evidence justifies the inference that Taxpayer's sole stockholder was attempting to drain off the corporate profits in the guise of salary.

We turn, now, to some of the defects in Taxpayer's proof to overcome the presumption against it.

First, no evidence was offered as to the amount of time spent by Miles in the discharge of his duties to the corporation. When asked this question, Miles replied: "I devoted all of the time I considered necessary to fulfill those duties." And, again: "I devoted all of the time that was necessary to the successful operation of the corporation." Such testimony cannot be calculated to have materially assisted the Tax Court in determining the reasonableness of the claimed compensation.

Also, there is no evidence whatsoever of the salaries paid similar executives in similar concerns. Taxpayer purports to supply such proof in the testimony of two witnesses, Pearce and Mitchell. The substance of their testimony is that men soliciting produce on consignment are usually paid on the basis of 3% of the gross business they solicit, and that the president of a corporation in the produce business generally

"fares" far better than a solicitor. Taxpayer's argument then proceeds: since Miles did virtually all of the soliciting for Taxpayer, he is entitled to salaries of 3% of the gross sales. But this argument seems to us fallacious. Taxpayer had two principal sources of income—one, income earned as commissions on consigned merchandise and, the other, income earned from the outright purchase and sale of produce. The testimony of Pearce and Mitchell related only to the method of paying solicitors of consignment business. And there is nothing in the record to show what proportion of Taxpayer's total income was derived from the consignment business as against that derived from the outright purchase and sale of produce. In any event, the testimony of Pearce and Mitchell falls far short of the character of evidence of salaries paid in similar businesses which would have been of aid to the Tax Court. See L. & C. Mayers Co., Inc. v. Commissioner, 2 Cir., 131 F.2d 309, certiorari denied Mayers Co. v. Helvering, 318 U.S. 773, 63 S.Ct. 770, 87 L.Ed. 1143.

■ We do not wish to overemphasize the importance of evidence as to the amount of time spent in performing the services, or evidence of salaries paid in similar businesses; and certainly do not suggest that such evidence is absolutely necessary in cases of this sort. Yet, under the circumstances, the absence of such proof is material in considering whether Taxpayer has sustained its burden. Crescent Bed Co. v. Commissioner, supra; Miller Mfg. Co. v. Commissioner, supra.

Finally, there may be call for some explanation of why the Commissioner, and the Tax Court, considered reasonable compensation to be $15,000 for each of the years 1942 and 1943, and only $10,000 for the year 1944.

Prior to 1943, Taxpayer corporation dealt in both fruits and vegetables. In August, 1943, Miles decided on behalf of Taxpayer and himself that the corporation would cease soliciting business in vegetables and that he individually would specialize only in the handling of vegetables. Accordingly, Miles, at that time, under the name and style of Carlisle Miles & Co., began to specialize in the handling of vegetables. This arrangement was in force during the whole of the tax year 1944.

Taxpayer offered no evidence of the amount of time spent by Miles, during 1944, in conducting individually the affairs of Carlisle Miles & Co. The Tax Court found, however, that during the tax year 1944 the Taxpayer corporation had gross sales amounting to $1,105,595.02 from which it realized a gross profit of $51,605.04; while, during the calendar year 1944, Carlisle Miles & Co. had gross sales of $529,365.34 from which it realized a gross profit of $33,253.73. These figures show that Carlisle Miles & Co. was a substantial enterprise and that it must of necessity have consumed a considerable portion of the time and efforts of Miles.

Miles testified that the businesses of the Taxpayer and of Carlisle Miles & Co. were seasonal, that the seasons did not conflict and that, during the vegetable season when Miles was engaged primarily with the affairs of Carlisle Miles & Co., the Taxpayer corporation was "more or less out of business." In answer, however, the Commissioner points out that, prior to 1944, Miles, on behalf of Taxpayer, dealt in both fruits and vegetables, and that during 1944, while there was no change in the total services performed by Miles, a portion of those services were performed on behalf of Carlisle Miles & Co. rather than Taxpayer. In the absence of a more exact yardstick, we can find no clear error in the Commissioner's determination of Miles' salary for 1944.

■ On the basis of the entire record, we agree with the Tax Court that "the proof offered by petitioner was not such as to support a conclusion that respondent erred in his determination." The decision of the Tax Court is affirmed.

Affirmed.