DONALD PALMER COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Donald Palmer Co. v. Commissioner
Docket No. 24901-92
United States Tax Court
T.C. Memo 1995-65; 1995 Tax Ct. Memo LEXIS 66; 69 T.C.M. (CCH) 1869; February 7, 1995, Filed *66 Decision will be entered under Rule 155. For petitioner: Mark S. Stein and David H. Bernstein. For respondent: Linda K. West. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 195,281 in petitioner's Federal income tax for the fiscal year ended June 30, 1990. The sole issue remaining for decision is whether officer's compensation of $818,533 paid to Donald Palmer (Palmer) is unreasonable and thus not deductible by petitioner. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner's principal office was in New Orleans, Louisiana. Prior to 1977, Palmer owned and operated a plastic bag manufacturing company. Palmer had been involved in the bag business since the age of 19. In 1977, Palmer sold his manufacturing business because of health and other problems that he encountered. In 1979, Palmer incorporated *67 petitioner and capitalized the corporation with $ 5,000. Petitioner had a 1,100-square-foot office located on the first floor of Palmer's house. Petitioner was primarily engaged in the business of buying and selling various types of bags and packaging material. Petitioner maintained very little inventory and, in essence, functioned as a "broker" by purchasing finished goods or raw materials from a supplier and then arranging for such products to be delivered to the customer, or, in the case of raw materials, to another manufacturer for further production. The supplier billed petitioner, and petitioner, in turn, billed its customer. Petitioner was also involved in consulting work with respect to packaging needs of clients. Since its inception, Palmer was the president and sole officer and shareholder of petitioner. Palmer generated almost all of petitioner's sales and was responsible for the daily operation and management of petitioner. Palmer worked approximately 70 hours per week and took very little time off for vacation or illness. Petitioner's gross receipts, gross profit, officer's compensation, and taxable income were as follows: Tax
Year Gross
Gross
Palmer's Taxable
Ended
Receipts Profit Salary Income 6/30/82
$ 2,469,535
$   639,742
$   150,000
$ 197,207 6/30/83
2,602,522
707,338
300,000
99,092 6/30/84
3,112,563
693,348
300,000
46,854 6/30/85
3,532,714
801,997
300,000
87,697 6/30/86
2,948,626
666,139
275,000
76,552 6/30/87
3,182,588
725,687
435,000
121,080 6/30/88
3,395,436
708,678
350,000
150,279 6/30/89
4,068,042
801,490
390,000
262,126 6/30/90
4,017,352
1,137,182
1,259,979
(339,417)
6/30/91
4,057,664
884,969
617,113
17,384 *68 Petitioner did not pay or declare any dividends during the period July 1, 1979, through June 30, 1990. The employees of petitioner during all relevant years were Palmer, a secretary, a bookkeeper, and a cleaning person. Petitioner also briefly employed a sales service/delivery man. In 1985 and 1987, petitioner entered employment contracts with two different salesmen; however, neither salesman generated any substantial business, and their employment was terminated after a short period. The 1985 employment contract provided for a base salary for the salesman and a yearly bonus computed under a formula based on petitioner's net profit before taxes in the previous and current year. The 1987 employment contract provided for a base salary and a bonus of up to 25 percent, but not less than 5 percent, of the gross profit on sales in which the salesman had active involvement. The 1987 contract also provided for an additional bonus to be determined by petitioner based upon performance and cooperation. Prior to 1986, petitioner maintained a pension plan for its employees, and the following contributions were made by petitioner for the benefit of Palmer: Tax Year Ended
Amount
6/30/82
$ 23,239
6/30/83
90,675
6/30/84
141,750
6/30/85
114,300
6/30/86
106,184
*69 In 1987, Palmer began to attempt to sell petitioner. On January 4, 1988, petitioner and Palmer entered into a Deferred Compensation Agreement (agreement) that provided for certain payments to be made to Palmer upon his retirement. The agreement provided that, on October 19, 1991 (Palmer's 65th birthday), and continuing on the first day of each month thereafter, petitioner would pay to Palmer $ 16,666 per month for 10 years and, also, that petitioner would set aside sufficient funds to meet this future liability. However, the agreement also provided that Palmer could remain employed after his 65th birthday and that no payments would be made until after Palmer's actual retirement from regular full-time employment. Further, pursuant to the agreement, all retirement benefits would be provided out of the general assets of petitioner at the time of payment and petitioner was under no obligation to set aside funds or to provide security for any of its obligations under the agreement. (There is no explanation of the apparently contradictory terms of the agreement.) On its income tax returns for its fiscal years 1988 through 1991, petitioner reported deferred compensation expense (accrued *70 but not deducted) and deferred compensation liabilities as follows: Tax
Deferred
Deferred
Year Compensation
Compensation
Ended
Expense Liability 6/30/88
$ 208,013
$ 208,013
6/30/89
208,012
416,025
6/30/90
208,012
624,038
6/30/91
208,013
832,050
In 1990, petitioner paid to Palmer a bonus of $ 818,533 in addition to a salary of $441,446. The minutes from a meeting of the board of directors of petitioner, at which only Palmer was present, state: "It was proposed and resolved by all present that a bonus in the amount of $ 818,533 be paid to Mr. Donald Palmer." Petitioner paid the bonus by transferring securities that it owned to Palmer, and petitioner claimed a deduction of $ 1,259,979 ($ 441,446 plus $ 818,533) for compensation of officers on its June 30, 1990, income tax return. The balance sheet on Schedule L of petitioner's June 30, 1990, income tax return reported common stock of $ 4,800 and retained earnings of ($ 306,726). In 1991, Palmer sold petitioner to Steve Seeber (Seeber). Seeber was to pay the purchase price to Palmer over a 5-year period from the earnings of petitioner. After the sale to Seeber, Palmer continued to work for petitioner *71 in the same capacity. Shortly thereafter, Seeber determined that he would have to hire several employees to take the place of Palmer. As a result, Seeber rescinded the sale and returned the stock of petitioner to Palmer. Other potential purchasers with whom Palmer had discussions indicated that they were interested in purchasing petitioner only if Palmer continued to work for petitioner. Palmer decided that, if he was required to continue working, he would prefer to work for himself. In the notice of deficiency, respondent determined that petitioner's deduction for officer's compensation on its June 30, 1990, return must be reduced by the bonus of $ 818,533 because that amount, in addition to salary of $ 441,446, exceeded a reasonable allowance for salaries and other compensation under section 162. OPINION Section 162(a)(1) allows as a deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered." Section 1.162-9, Income Tax Regs., provides that bonuses paid to employees are deductible "when such payments are made in good faith and as additional compensation for the services actually rendered by the employees, provided such payments, *72 when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered." Whether an expense that is claimed pursuant to section 162(a)(1) is reasonable compensation for services rendered is a question of fact that must be decided on the basis of the particular facts and circumstances. Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058-1059 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973). The burden is on petitioner to show that it is entitled to a compensation deduction larger than that allowed by respondent. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d 1315, 1324 (5th Cir. 1987), affg. T.C. Memo. 1985-267. The cases contain a lengthy list of factors that are relevant in the determination of reasonableness, including: The employee's qualifications; the nature, extent, and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with gross income and net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; *73 the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and the amount of compensation paid to the particular employee in previous years. Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115 (6th Cir. 1949), affg. a Memorandum Opinion of this Court; see also Commercial Iron Works v. Commissioner, 166 F.2d 221, 224 (5th Cir. 1948). No single factor is determinative. Home Interiors & Gifts, Inc. v. Commissioner, 73 T.C. 1142, 1156 (1980). When the case involves a closely held corporation with the controlling shareholders setting their own level of compensation as employees, the reasonableness of the compensation is subject to close scrutiny. Owensby & Kritikos, Inc. v. Commissioner, supra at 1324; Elliotts, Inc. v. Commissioner, 716 F.2d 1241, 1243 (9th Cir. 1983), revg. and remanding on other grounds T.C. Memo. 1980-282. Petitioner contends that Palmer was "a one man corporation"; that Palmer was responsible *74 for virtually 100 percent of the sales and profits of petitioner; that petitioner could not survive without Palmer; and, thus, that the bonus of $ 818,533 was reasonable. Although Palmer's contributions to petitioner are not disputed, the conclusion that his compensation was, ipse dixit, reasonable does not necessarily follow. In support of its position, petitioner cites Old Colony Ins. Serv., Inc. v. Commissioner, T.C. Memo. 1981-177, and Weaver Paper Co. v. Commissioner, T.C. Memo. 1980-72, where we held that payments made to valuable employees were deductible as compensation even though such employees were also shareholders of closely held corporations. Old Colony involved an insurance brokerage corporation that was owned by two shareholders who were also the officers and directors of the corporation. At issue there was an increase in the salaries of the two shareholders that had been adopted by the shareholders at a board of directors meeting. Although the corporation had never declared or paid dividends to the shareholders, we held that the salary increases were reasonable. We based our holding on our findings *75 that the shareholder/employees were undercompensated in prior years and were not paid dividends in order to accumulate operating capital to meet obligations under its issued insurance policies. In Weaver Paper Co., we upheld as reasonable an annual salary of $ 100,000 plus a bonus of 30 percent of corporate net profits that were paid to a shareholder/employee who owned 97 percent of the taxpayer/corporation and was also its chief executive officer and chairman of the board. We reached that conclusion because the record there demonstrated that the shareholder/employee would have earned a similar amount had he performed the same services for another employer. Moreover, because the corporation had taxable income and paid dividends during the years in issue in that case, we were satisfied that the case did not involve "a situation where a corporate officer was trying to draw off corporate earnings under the guise of salaries." Weaver Paper Co. v. Commissioner, supra.
The circumstances here are distinguishable from both Old Colony and Weaver Paper Co.. Here, there is no evidence that petitioner was undercompensated in years prior to 1990. *76 During petitioner's fiscal years 1982 through 1989, Palmer was paid salaries ranging from $ 150,000 to $ 435,000, which constituted a range of 23.5 to 59.9 percent of petitioner's gross profit. Moreover, Palmer was covered by a pension plan and, subsequently, by a deferred compensation plan that provided for yearly accumulations of over $ 200,000. Petitioner contends that the bonus was paid to Palmer in 1990 because Palmer had abandoned plans to expand the business, and, thus, the corporation did not need the funds that had been accumulated for possible expansion. However, even if we were to assume that the securities that were distributed to Palmer as a bonus were accumulated in order to fund future expansion and then "freed up" when Palmer decided not to expand, it is not conclusive that the payment of such securities to Palmer as a one-time bonus would constitute reasonable compensation as opposed to a dividend. Further, in contrast to Weaver Paper Co., no dividends were ever paid, and the compensation resulted in a taxable loss. Additionally, the record contains no evidence indicating that Palmer would have received the bonus at issue had he been working for an independent *77 employer. Palmer testified that the main reason for the bonus was that petitioner had its most profitable year in 1990. Nevertheless, the record contains no evidence that the bonus amount of $ 818,533, paid in securities, was computed in conjunction with the increase in profits during the 1990 fiscal year or that it was based on any consistently applied bonus program. Compare Elliotts, Inc. v. Commissioner, supra at 1247(evidence of a reasonable, longstanding, consistently applied compensation plan is probative that compensation is reasonable). Under the circumstances here, an important factor is whether a hypothetical independent investor would be willing to compensate Palmer as he was compensated by petitioner. Elliotts, Inc. v. Commissioner, supra.In theory, an independent investor would not approve compensation to the extent that such investor is deprived of a reasonable return on his investment in an otherwise profitable business. The failure of petitioner to pay dividends does not, by itself, lead to the conclusion that the bonus that was paid to Palmer was unreasonable. Owensby & Kritikos, Inc. v. Commissioner, supra at 1326. *78 However, where, as here, the compensation resulted in negative retained earnings and a negative return on shareholder equity (as measured by net income after taxes divided by capital contributions plus retained earnings), we cannot conclude that an independent investor would be pleased. Cf. Automotive Inv. Dev. Inc. v. Commissioner, T.C. Memo. 1993-298 (an independent shareholder would be pleased with a return on shareholder equity of 85 and 48 percent). Based on these negative returns, it is reasonable to conclude that funds are being "siphoned out of the company disguised as salary." Elliotts, Inc. v. Commissioner, supra at 1247. Respondent's failure to impose an accumulated earnings tax does not preclude a determination that payments to shareholders that are characterized as compensation exceed a reasonable allowance and, thus, constitute dividends. See J.H. Rutter Rex Manufacturing Co. v. Commissioner, 853 F.2d 1275 (5th Cir. 1988) affg. in part, revg. in part, and remanding T.C. Memo. 1987-296. Petitioner also argues that part of the bonus payment *79 consisted of securities that had been accumulated to fund the deferred compensation agreement and, therefore, that part of the bonus payment was a payment under that agreement. Palmer testified that, because potential purchasers of petitioner did not like the appearance of the deferred compensation liability, he decided to terminate the agreement in 1990 in order to eliminate the deferred compensation liability. Thus, petitioner contends that the only issue is whether the amounts that were accumulated as deferred compensation in 1988, 1989, and 1990 were reasonable in those years. Petitioner's contention is not supported by the record and contradicts its earlier argument that the securities were accumulated in order to fund a potential expansion. Petitioner's income tax returns for its fiscal years 1988 through 1991 indicate that the deferred compensation increased each year; no reduction in the liability account was made to account for the bonus payment of $ 818,533 in 1990. Petitioner's contention that the entries for the deferred compensation liability on its income tax returns were erroneous is not persuasive. Moreover, the agreement expressly states that no payments would *80 be made under the agreement until after Palmer actually retired from regular full-time employment, and, as of 1990, Palmer was still working full time for petitioner. Although petitioner contends that, under Louisiana law, the agreement could be modified orally, we are not persuaded that the agreement was modified or terminated or that any part of the bonus represented payment under the agreement. The record indicates that Palmer was the key employee of petitioner; nevertheless, limits to compensation exist even for the most valuable employees. Owensby & Kritikos, Inc. v. Commissioner, 819 F.2d at 1325. Based on this record, petitioner has not demonstrated that the bonus of $ 818,533 constitutes reasonable compensation, and, thus, it is not entitled to deduct that amount under section 162(a)(1). In our opinion, however, some bonus is reasonable. In reaching our best judgment on the entire record, we believe that 50 percent of Palmer's salary for the year, or $ 220,723, is reasonable. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). This amount, combined with his salary, represents 58.2 percent of petitioner's *81 gross profit for the year and, therefore, is consistent with prior patterns of compensation to Palmer. It is also consistent with the minimal evidence about contracts with other employees. Decision will be entered under Rule 155.